UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RHONDA TURNER,

                Plaintiff,          10-CV-6357T

      v.                                    **DECISION**
                                                **and ORDER**
NAZARETH COLLEGE,

                Defendant.
_____

## **INTRODUCTION**

Plaintiff, Rhonda Turner ("Plaintiff"), a former graduate student at Nazareth College ("Defendant" or "Nazareth"), brings this action pursuant 42 U.S.C. § 1981 ("§ 1981"), alleging intentional discrimination and retaliation based on her race, African American, and breach of an implied contract under New York State law. See Compl. ¶¶ 1, 4. Plaintiff specifically claims that Defendant breached an implied contract to grant her a degree and to recommend her for New York State teacher certification, subjected her to a racially hostile environment, and retaliated against her after she complained of problems during her student teaching placement. Id. at ¶¶ 10, 17-18, 26-28, 31, 40.

Defendant moves to dismiss Plaintiff's Complaint pursuant to Rules 8(a) and 12(b)(6) ("Rule 12(b)(6)") of the Federal Rules of Civil Procedure, arguing that Plaintiff has failed to state a plausible claim for relief for either discrimination or retaliation and that this court should decline to exercise supplemental

jurisdiction over Plaintiff's state law claim. See Def. Mem. of Law at 1. Plaintiff opposes Defendant's motion, contending that she has stated a plausible claim for both discrimination and retaliation pursuant to § 1981. For the reasons set forth below, this Court grants Defendant's Motion to Dismiss Plaintiff's intentional discrimination and retaliation claims and declines to exercise jurisdiction over Plaintiff's state law claim for breach of implied contract. Accordingly, Plaintiff's Complaint is hereby dismissed.

## BACKGROUND

In connection with a motion to dismiss under Rule 12(b)(6), the court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir.2005). It is permissible to consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] solely relies and...is integral to the complaint." See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.2007) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991)). "The court need not accept as true an allegation that is contradicted by documents on which the complaint relies." See In re Bristol-Myers Squibb Sec. Litig., 312 F.Supp.2d 549, 555 (S.D.N.Y.2004); see also Rapoport v. Asia Elecs. Holding Co., 88

F.Supp.2d 179, 184 (S.D.N.Y.2000) ("If these documents contradict the allegations of the amended complaint, the documents control."); Matusovsky v. Merrill Lynch, 186 F.Supp.2d 397, 400 (S.D.N.Y.2002) ("If a plaintiff's allegations are contradicted by [a document attached to the complaint as an exhibit], those allegations are insufficient to defeat a [Rule 12(b)(6)] motion to dismiss."). Accordingly, this Court will consider the following facts set forth in the Complaint and Plaintiff's written correspondence with Defendant regarding her student teaching placement, as they are incorporated by reference in the Complaint and integral to her claims of intentional discrimination and retaliation.

Plaintiff enrolled at Nazareth in 2005 in the inclusive education program, seeking a Masters Degree in education and a recommendation for New York State certification to teach biology. Plaintiff passed the requisite New York State teacher certification examinations.

In December 2006, Nazareth placed Plaintiff as a student teacher at Freddie Thomas High School with coordinating teacher, Logan Newman ("Newman")[1]. The placement began on January 15, 2007. Nazareth also assigned David Borland ("Borland") to supervise and

---

[1] Plaintiff's placement at Freddie Thomas High School was her second student teaching placement through Nazareth. Her first student teaching placement occurred the Spring of 2006. Defendant states that Plaintiff's first placement also ended unsuccessfully. While Plaintiff has not alleged that her first placement was not successful, she stated that prior to her placement with Newman, she "reflected a great deal on [her] first placement and made changes on [her] second placement to be successful."

observe Plaintiff during this placement. Newman and Borland observed and evaluated Plaintiff on several occasions.

On March 1, 2007, Plaintiff wrote a memo to Borland and Newman expressing concern about their expectations of her in the placement. Specifically, Plaintiff stated that she had communication problems with Newman regarding lunch and other breaks. Plaintiff stated that she was "more than willing to cooperate," but that "[i]n order for [her] to be successful, [she would] need to take a lunch break." Plaintiff also recounted a specific mis-communication with Newman when she asked to take a ten minute break and Newman appeared to her to be upset that she had not returned sooner. She stated that after this incident she was required to explain how long she would be gone prior to taking a break. Plaintiff further stated that despite these issues, she received positive feedback and was in the process of incorporating Newman and Borland's suggestions into her teaching style.

Plaintiff further alleges that on March 13, 2007, Borland came to observe her in Newman's classroom. While she was teaching, Newman "mocked" her and later took over the class entirely. Later, after Borland and the students had left the room, Newman yelled at Plaintiff, "[w]ho do you think you are? I want you to get your things and leave. If you do not come back you will fail tomorrow." Plaintiff spoke to Borland about the incident, and Borland instructed Plaintiff to return and observe Newman for the final

three days of her placement, which was scheduled to end on March 16, 2007.

Plaintiff return the next day, and Newman informed her that her placement in his classroom had been summarily terminated. Plaintiff states that Newman did not explain why the placement ended. Plaintiff further alleges that prior to her early termination, she had completed four successful observations.

On March 19, 2007, Plaintiff sent a letter to Dr. Craig Hill in the Department of Education relating what happened on March 13 and complaining that her "placement was ended on March 14, without a clear explanation as to what went wrong or an opportunity to discuss the matter." She expressed to Dr. Hill that she "did what [she] could to work with Mr. Newman to have a successful placement."

Plaintiff again wrote to Dr. Hill on March 21, 2007, and stated, "the overall process I have been subjected between Nazareth College and the [placement] schools has been unfair. It was my intention to succeed." Plaintiff further related that following her first student teaching placement in 2006, she reflected on the feedback she received from her supervisors and attempted to make changes to implement in Newman's classroom. Plaintiff alleges that Dr. Hill responded by letter on April 11, 2007, and encouraged her to withdraw from her current program and seek a General Education

Master's Degree, which would not lead to certification as a teacher.

Plaintiff next wrote an e-mail to Dr. Glander in the Department of Education requesting an explanation for the termination of her placement. In the e-mail, Plaintiff references a letter she received from Dr. Glander, which stated that Nazareth had reviewed the records relating to her placement and had decided to deny her request for teacher certification. Plaintiff contends that the letter did not adequately explain the reason she was not permitted to complete the placement and obtain certification. In the e-mail she states, "If you fail to tell what I have done wrong, I will conclude that this process has been extremely unfair and that my rights as a professional student have been violated."

Plaintiff then sent a letter to Dr. Kay Marshman, Associate Vice President for Graduate Studies, appealing Nazareth's decision to deny her a recommendation for certification. Plaintiff also requested to change her program to a General Education Master's Degree and stated on the form that the reason for the change was that she was "not allowed to complete the original program."

On June 27, 2007, Plaintiff received a letter from Nazareth communicating their final decision to deny Plaintiff's appeal for certification. Plaintiff alleges that "no other Caucasian student was treated in this fashion."

**DISCUSSION**

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept...all factual allegations in the complaint and draw...all reasonable inferences in the plaintiff's favor." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. at 1965 (internal quotation marks omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" See Goldstein v. Pataki, 516 F.3d 50, 56-57 (2d Cir.2008) (quoting Twombly, 127 S.Ct. at 1974).

A. Plaintiff's Intentional Discrimination Claims

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the

basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.)." Milan v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). In the instant case, Plaintiff, an African American female, alleges that an implied contract existed between her and the Defendant, the terms of which were that if she satisfied Nazareth's requirements, she would receive the graduate degree and teacher certification she sought. See Pl. Mem. at 7. Plaintiff alleges that the college breached this implied contract and that the breach occurred under circumstances giving rise to an inference of racial discrimination. Id. at 10. Plaintiff states that no other Caucasian student was treated this way and that Nazareth subjected her to a racially hostile environment. Compl. ¶¶ 40, 51.

§ 1981 proscribes racial discrimination concerning a person's right to "make and enforce contracts," which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). New York State courts have recognized that an implied contract may exist between a university and a student. See Gally v. Columbia University, 22 F.Supp.2d 199, 206 (S.D.N.Y. 1998)(listing cases expounding this theory of liability). However, "[n]ot every dispute between a

student and a university is amenable to a breach of contract claim..." Id.  It is well settled that claims for educational malpractice are not recognized under New York law, and "claims that sound in tort and ask the Court to involve itself in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches her claims in terms of breach of contract." Id. at 207 (citing Andre v. Pace Univ., 170 Misc.2d 893 (N.Y.App.Term 1996); Sirohi v. Lee, 222 A.D.2d 222 (1st Dept. 1995); Paladino v. Adelphi, 89 A.D.2d 85 (2nd Dept. 1982); see also Keles v. New York Univ., 1994 WL 119525, *6 (S.D.N.Y. 1994).  Moreover, allegations of mistreatment by the college are insufficient to state a claim for relief where a plaintiff has not identified a specific obligation or promise that was breached. See  Tiu-Malabanan v. Univ. of Rochester, 2008 WL 788637 (W.D.N.Y.)(Siragusa, J.)(citing Gally, 22 F.Supp2d at 206-7). "Breach of contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational.'" Id. at *5 (quoting Rodriguez v. New York University, 2007 WL 117775 *4 (S.D.N.Y.); Babiker v. Ross Univ. School of Medicine, 2000 WL 666342, *6 (S.D.N.Y.)).

In the instant case, Plaintiff contends that Nazareth had a contractual obligation to provide Plaintiff the degree and

certification she sought and that Nazareth's actions were "arbitrary because [they were] motivated by racial prejudice against the Plaintiff." Compl. ¶ 47. Plaintiff alleges that the school treated her unfairly by denying her a recommendation for teacher certification and by suggesting that she change her degree certification to a General Education Master's Degree. She also claims that a particular coordinating teacher "mocked" her, denied her adequate breaks, and ultimately forced her to leave his classroom permanently, just three days before she would have completed her student teaching placement. She claims that she was not allowed to complete the placement, and that no other Caucasian student was treated this way.

Plaintiff's allegations are insufficient to state a claim for breach of an implied contract, as she has alleged nothing more than a claim for educational malpractice. Plaintiff's allegation that Nazareth's decision to deny her certification was "arbitrary because it was motivated by racial prejudice" is simply too conclusory to survive a motion to dismiss. See Albert v. Carovano, 851 F.2d 561, 572-3 (2d Cir. 1988). Plaintiff has not alleged facts that would even suggest that the denial of Plaintiff's degree and certification was the result of racial discrimination. Rather, the facts suggest that Nazareth's decision was motivated by the fact that Plaintiff had not successfully completed her student teaching placement, not because of her race. Plaintiff states that

she was not permitted to complete the requirements to obtain her degree and certification, however Plaintiff's complaints regarding the "subjective professional judgments" of Nazareth or her mistreatment by Nazareth are insufficient to state a claim for breach of an implied contract under § 1981. See Rodriguez, 2007 WL 117775, at *4 (citing Gally, 22 F.Supp. at 206-7). This Court will not step into the shoes of the Defendant and second guess its decision to deny Plaintiff's degree and certification after she failed to complete the requirements. Nor will this Court find that their decision not to afford Plaintiff another chance to complete the requirements amounted to a discriminatory breach of an implied contract, absent any facts that would tend to suggest that their decision was motivated by Plaintiff's race.

Further, Plaintiff's allegation that no other Caucasian student was treated this way, without more, is insufficient to establish an inference of intentional discrimination. See Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994) ("A plaintiff alleging racial...discrimination by a university must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."); see also Odom v. Columbia University, 906 F.Supp. 188 (S.D.N.Y. 1995) (finding insufficient a plaintiff's allegations

that the university treated her differently than other Caucasian students because "to support a claim of selective [treatment] a plaintiff must allege purposeful and systemic discrimination by specifying instances in which she was singled out for unlawful oppression in contrast to others similarly situated")(quoting <u>Albert</u>, 851 F.2d at 573). Here, Plaintiff has not alleged that a similarly situated Caucasian student was granted a degree and certification, or any other facts that would tend to support her claim of racial discrimination by the Defendant. See <u>Odom</u>, 906 F.Supp. at 194-5 (citing <u>Yusuf</u>, 35 F.3d at 713) ("A mere factual assertion of unequal treatment or race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion."). Plaintiff cannot survive a motion to dismiss by merely speculating that she was treated differently than other Caucasian students, she must set forth enough facts to show that other similarly situated Caucasian students (*i.e.* those who did not successfully complete the school's degree and certification requirements) were granted the degree and certification they sought.

Plaintiff has also not alleged any facts in support of her claim that she was subjected to a <u>racially</u> hostile environment. To state a claim for a hostile environment, Plaintiff must show that the conduct was "sufficiently severe or pervasive to alter the conditions of [her placement] and create an abusive environment", and that there is a specific basis for imputing the conduct to the

Defendant. Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). Plaintiff must also allege facts to support her claim that the conduct occurred because of her race. See Alfano, 294 F.2d at 374.

It appears that Plaintiff's claim concerns her relationship with Newman. However, Plaintiff's conflicts with Newman over breaks, and her allegations that he mocked and yelled at her, without more, do not amount to a racially hostile environment. Plaintiff has not alleged that Newman mocked her or yelled at her in a racially derogatory manner or that he used racial epithets, and the Complaint does not include any facts that would tend to suggest that her conflict with Newman over lunch breaks was motivated by racial animus. Further, Plaintiff has not alleged facts to support her claim that Nazareth is responsible for the actions of Newman, a volunteer coordinating teacher employed by the school district in which Plaintiff was placed. Therefore, Plaintiff has not sufficiently stated a plausible claim for a racially hostile environment.

Accordingly, this Court finds that Plaintiff has not stated a plausible § 1981 claim for discriminatory breach of an implied contract or a racially hostile environment. Therefore, Plaintiff's intentional discrimination claims are hereby dismissed.

B. Plaintiff's § 1981 Retaliation Claim

To state a claim for discriminatory retaliation under § 1981, a plaintiff must allege "discriminatory treatment because of the

filing of a discrimination charge." See Choudhury v. Polytechnic Institute of New York, 735 F.2d 38, 44 (2d Cir. 1984). In the instant case, Plaintiff did not complain of racial discrimination until she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in June 2008, nearly one year after Defendant's final decision to deny her the degree and teacher certification she sought. The Defendant's actions were completed prior to Plaintiff's retaliation charge, and therefore, they cannot be the basis of a retaliation claim.

Plaintiff alleges that she "in good faith complained to management of race discrimination...by formally protesting the conditions of her environment, and by formally filing a charge of discrimination." Compl. ¶¶ 60-1. However, this Court is not obligated to accept this allegation as true, as it is contradictory to the actual contents of the letters Plaintiff cites to support her claim and Plaintiff's retaliation charge was not filed with the EEOC until June 2008. See Bristol-Myers, 312 F.Supp.2d at 555; see also Rapoport, 88 F.Supp.2d at 184; see also Pl. Mem. at 17-20, Compl. ¶¶ 17, 32-41.

In support of her retaliation claim, Plaintiff cites her March 19, 2007 and March 21, 2007 letters to Dr. Hill and the April 11, 2007 response from Dr. Hill, which discuss the problems Plaintiff encountered during her teaching placement with Newman. Plaintiff does not indicate in her letters to Dr. Hill that she was

complaining of racial discrimination, that she was subjected to a racially hostile environment, or that she felt that she was the victim of discrimination of any kind. Plaintiff's letters merely relate the events that occurred in Mr. Newman's classroom and state that Plaintiff attempted to successfully complete her degree and is continuing to seek certification. Plaintiff also cites her May 31, 2007 letter to Dr. Glander and her June 7, 2007 letter to Dr. Kay Marshman which relate the same information and request a full explanation for the denial of certification or, Plaintiff warned, "I will conclude that this process has been extremely unfair and that my rights as a professional student have been violated." Plaintiff did not complain to Nazareth that she felt that her rights were being violated because of her race or that she had been subject to a racially hostile environment in Newman's classroom. Rather, Plaintiff's complaints to Nazareth concerned her contention that she was unfairly denied her degree and certification. However, allegations of unfair treatment are insufficient to state a claim for retaliation, where the allegations of unfair treatment are not based on discrimination. See Early v. Wyeth Pharmaceuticals, Inc., 603 F.Supp.2d 556, 575-6 (S.D.N.Y. 2009). As there is no indication in the Complaint that Nazareth was aware that Plaintiff was complaining of racial discrimination, or that the unfair treatment was due to her race, this Court finds that Plaintiff has not stated a claim for discriminatory retaliation.

See Brummel v. Webster Central School Distict, Transportation Department, 2009 WL 232789, *17-*18 (January 29, 2009)("plaintiff must complain of discrimination in sufficiently specific terms so that the [defendant] is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race..."; see also Int'l Healthcare Exchange, Inc., v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y.2007)(to be considered protected activity, the employee's complaint must put the employer on notice that discrimination...is occurring)).

Accordingly, because this Court does not find that Plaintiff actually complained of racial discrimination prior to the denial of her degree and certification, Plaintiff's § 1981 retaliation claim is dismissed.

### C. Plaintiff's State Law Claim

Because this Court finds that Plaintiff has not stated a claim for intentional racial discrimination or retaliation this Court declines to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim pursuant to 28 U.S.C. § 1367(c)(3). See Seabrook v. Jacobson, 153 F,2d 70, 71-2 (2d Cir. 1998); see also Eckert v. Schroeder, Joseph & Assocs., 364 F. Supp. 2d 326 (W.D.N.Y. 2005) (declining to exercise supplemental jurisdiction over state law claims and dismissing plaintiff's complaint, where the sole federal claim in the complaint was

dismissed). Accordingly, Plaintiff's state law claim for breach of contract is dismissed.

**CONCLUSION**

For the reasons set forth above, this Court grants Defendant's motion to dismiss in its entirety. Plaintiff's Complaint is hereby dismissed.

ALL OF THE ABOVE IS SO ORDERED.

                                                   s/ Michael A. Telesca
                                                    MICHAEL A. TELESCA
                                   United States District Judge

Dated:    Rochester, New York
            January 28, 2011